1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    TAZMA DIWALI ANAYA,                        Case No.  13-cv-04090-WHO

              Plaintiff,
8
                                                 **ORDER GRANTING MOTION TO**
9         v.                                     **DISMISS**

10   MARIN COUNTY SHERIFF, et al.,               Re: Dkt. No. 49

              Defendants.
11

12        Plaintiff Tazma Diwali Anaya describes a series of events on May 23 and 24, 2012,

13   beginning with her arrest at the Bernard Osher Marin Jewish Community Center (MJCC) and

14   including her detention in the Marin County Jail, that are clearly upsetting to her.[1]  She has not

15   plausibly alleged a policy or practice that could make the Marin County Sheriff's Department

16   liable for her claims, nor has she been able to identify and state claims against the individual

17   Deputy Sheriffs involved in the incidents.  The Sheriff's Department's motion to dismiss is

18   GRANTED.  Because plaintiff may be able to provide additional facts to support her claims, she

19   will be given leave to amend.

20                                    **BACKGROUND**

21        As detailed in the Court's prior Order (Docket No. 46), plaintiff's claims with respect to

22   the Marin County Sheriff's Department arise from her arrest on May 23, 2012 at the MJCC.

23

24   _____

     [1] The operative pleadings consist of plaintiff's initial Complaint (Docket No. 1) and the Amended
25   Complaint with Claims (Docket No. 21) read together.  The Court has also reviewed and treats as
     part of the operative pleadings, the allegations plaintiff makes in her Second Amended Claim
26   (Docket No. 64) that was filed in response to the Court's Order on defendant MJCC's motion to
     dismiss.  The Sheriff's Department argues that the Court should ignore any new allegations
27   regarding it contained in the Second Amended Claim, because plaintiff was not given leave to
     amend to add new allegations regarding the Sheriff's Department.  Docket No. 71.  However,
28   because plaintiff is proceeding pro se and the Court must determine whether leave to amend is
     warranted, the Court will review the allegations in the Second Amended Claim.

United States District Court
Northern District of California

1   Plaintiff alleges that the Sheriff's Department and individual Deputy Sheriffs violated her rights in

2   the following ways:

3        Plaintiff contends that the paramedics did not allow her to be taken to a hospital or to see

4   her own doctor. Instead, the paramedics conspired with the Sheriff's Department to check only her

5   mental stability, not her physical condition. Complaint (Docket 1) at 5.  She asserts that she was

6   arrested by the Sherriff's Department for failure to cooperate and trespass.  She claims the arrest

7   was in violation of her medical confidentiality, safe handling, and ADA. *Id*.  She alleges that

8   during this time, she was denied the use of a bathroom and all the while the MJCC conspired with

9   the Sheriff's Department in demanding that she stand up. *Id*.

10       Plaintiff was cuffed and taken out on a gurney. *Id*. She was taken briefly on the

11  paramedics' wagon and then let off on a "less visible" side of the MJCC and transferred to a

12  Sherriff's car.  *Id*. at 7.  She contends the car was too small, and she was injured in the process of

13  getting her into the car by over-tight handcuffs and when the Deputies pressed their thumbs into

14  her arms and lifted her by her arms. *Id*.  As a result of her treatment by the Sherriff's Deputies she

15  claims to have continuing dysfunction in her arms, hands, back, neck, legs, and nervous system.

16  *Id*.  She argues that her underlying medical condition – relapsing-remitting multiple sclerosis

17  (RRMS) – is exacerbated by stress, this stressful episode exacerbated her condition, and she

18  suffers from post-traumatic stress because of it. *Id*.

19       During her arrest and confinement – which continued into May 24, 2012 – she claims she

20  was denied accommodations for her special medical conditions including: separation from her

21  aide; denial of medications; denial of equipment for mobility; denial of her special diet; denial of

22  temperature regulation; and denial of access to medical care and a toilet. *Id*. at 8, 9.  At the jail,

23  she alleges that she was pushed to the ground, injured, and sworn at by a Deputy. *Id*. at 11. She

24  alleges she was "ushered" into the jail with her hair pulled back "screaming" in agony.  *Id*. She

25  alleges that this was done to hurt and humiliate her, and as a "control tactic" to violate her First

26  Amendment right to silence her speech and cries.  *Id*.

27       At the jail, she was removed from her wheelchair, "dropped" forward, and her breasts were

28  "ransacked/fondled" while her hands were still cuffed behind her back.  *Id*. She asserts the cuffs

United States District Court
Northern District of California

2

caused bruising and nerve damage. *Id*. at 9. She argues that she was injured when the Sheriff

Deputies forcibly removed her rings. *Id*. She claims that her personal aide was coerced into

coming to the jail to turn over a bag of Ms. Anaya's to a Sheriff's Deputy. *Id*. at10. Ms. Anaya

asserts this was a violation of her civil rights and HIPPA, since her bag was filled with sensitive

medical information. *Id*. Ms. Anaya alleges that the Sheriff Deputies pressured her to sign a

"ticket" and threatened that her arrest would be "an expensive ride." *Id*. 10, 11. Ms. Anaya asked

for a lawyer but was allegedly told "there will be no lawyer for you." *Id*. at 10.

In her Amended Complaint (Docket No. 21) she reiterates her allegations against the

Sheriff's Department, and asserts that the Deputies' actions at MJCC denied her Fourth

Amendment rights to be "secure in my person" and her First Amendment rights since her "protest"

was construed as resistance by the Deputies. *Id*. at 4. She asserts that her ADA rights were

violated when she was separated from her aide and was denied a wheelchair at the jail. *Id*. at 5.

She asserts she was punished by the Deputies because of her disabilities and charges the Deputies

with using excessive force in violation of 42 U.S.C. § 1983 and causing personal injury. *Id*. at 5-6.

In her "Second Amended Claim" (Docket No. 64), filed in response to the Court's

dismissal of the claims against the MJCC, plaintiff adds a few additional details regarding her

allegations against the Sheriff's Department.  She asserts that she was falsely arrested and falsely

imprisoned on "contrived" charges of trespassing and resisting/delaying. *Id*. at 1.  She asserts that

she could not be guilty of those charges, as the charges were dropped in response to her attorney

"asking for any/all records." *Id*.

Plaintiff identifies a particular Sheriff's Deputy as Doe 1, the deputy who drove her to the

jail and presumably caused her injuries when putting put her in the too small car. *Id*. at 2.  She

also identified Sheriff Deputy "Monique" as the arresting deputy who conspired with MJCC staff

to have her arrested for trespassing and delaying/resisting. *Id*. at 3-4.  Plaintiff alleges that her

arrest, handing, and the charges were intended to "thwart and silence" her because of her

complaints about the MJCC's treatment of plaintiff and failure to accommodate her disabilities.

*Id*. at 4.  She asserts that she wants her record cleared of the charges. *Id*.  Plaintiff contends that

under state law she "cannot be arrested for trespassing for exercising my free-speech right to

‘protest’, though I was no protester per se.” *Id*. at 5.

Plaintiff also alleges a tort claim against the Sheriff's Department asserting that she was intentionally arrested to injure her and her reputation, and that they intentionally denied her a bathroom and left her urine soaked for 2/3rds of a full day. *Id*. at 6. She asserts the Sheriff Deputies intentionally double fastened her hand cuffs and forced her into a too small car which caused "extreme pain, swelling, bruising and misery." *Id*. These acts were done to "subdue and silence" plaintiff and to ensure cooperation "as a negation" of her First Amendment rights. *Id*. Plaintiff alleges these intentional injuries caused her stress and exacerbated her underlying medical condition and caused her post traumatic stress disorder (PTSD).

In the Second Amended Claim, plaintiff clarifies that her constitutional and tort claims against the Sheriff's Department for her treatment at the jail are based on the denial of access to: her aide; her medication; mobility equipment; a cell with a toilet so she could defecate; a special diet (low salt, low sugar, fresh food, high fiber, balanced meals at short and regular intervals); adequate fluid to prevent dehydration; room temperature adjustments, clean clothes, linen and a blanket; religious counseling; psychiatric staff to address her stress symptoms; medical care of my own accord; medication for pain; and safe handling. *Id*. at 6-7.

She clarifies that her constitutional and tort claims against the Sheriff's Department arising from treatment on her way into the jail and during the booking are based on: being pushed to the ground with her face against gravel; being told to "Shut your fucking hole"; having her hair painfully pulled back, in agony; being punished for speaking out by too tight cuffs; having "fearsome" pressure applied by a Deputy's hands to her mid to upper back. She also alleges the Deputies coercing her aide to hand over plaintiff's bag violated her Fourth Amendment rights. *Id*. at 8-9.

Finally, she complains that the Sheriff's Department "is negligent in ADA standards while handling the public and the County of Marin is negligent to oversee this negligence for the jail and police overforce with the disabled." *Id*. at 9. She also complains that in another confinement at the jail (not during the confinement at issue), another Deputy told her that "the County of Marin does not adequately train its police nor oversee that persons with disabilities get appropriately

United States District Court
Northern District of California

1   cared for while in custody." *Id.* at 7-8

2       As a result of her treatment, Ms. Anaya complains that her arms and back still suffer, she

3   was unable to "properly toilet for at least a year due to Carpel Tunnel which increased my risk of

4   UTI or bladder infections such as the one I had entering the jail. It also was painful disgusting and

5   humiliating. My wrists and arms still pain me, though less. I am unable to do message as a result

6   of this, though I am licensed and trained." *Id.* at 7.

7       For relief, she seeks monetary damages and injunctive relief to ensure "full ADA

8   compliance enforced on the Marin Jail and adequate training and equipment to transfer, transport,

9   and manage disabilities of all types, whether physical, emotional, environmental, mental or

10  otherwise." *Id.* at 9.

11                                    **LEGAL STANDARD**

12      Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

13  if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

14  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

15  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard

16  requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

17  has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require

18  "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

19  relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

20      In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

21  court must assume that the plaintiff's allegations are true and must draw all reasonable inferences

22  in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

23  However, the court is not required to accept as true "allegations that are merely conclusory,

24  unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

25  F.3d 1049, 1055 (9th Cir. 2008).

26      Pro se complaints are held to "less stringent standards than formal pleadings drafted by

27  lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the

28  Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of

United States District Court
Northern District of California

5

1    any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se

2    pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim

3    has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). If

4    the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth

5    Circuit has "repeatedly held that a district court should grant leave to amend even if no request to

6    amend the pleading was made, unless it determines that the pleading could not possibly be cured

7    by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations

8    and internal quotation marks omitted).

9                                    **DISCUSSION**

10   **I.   CONSTUTITIONAL CLAIMS AGAINST THE SHERIFF'S DEPARMENT**

11        **A.        Legal Standard**

12        A municipality entity like the Sheriff's Department has no respondeat superior liability

13   under § 1983; that is, the entity has no liability under the theory that it is liable simply because it

14   employs a person who has violated a plaintiff's rights. *See Monell v. Dep't of Social Servs.*, 436

15   U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). However, municipal

16   entities such as the Sheriff's Department, are "persons" subject to liability under 42 U.S.C. § 1983

17   where official policy or custom causes a constitutional tort. *Monell*, 436 U.S. at 690. To impose

18   municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: "(1)

19   that [the plaintiff] possessed a constitutional right of which [she] was deprived; (2) that the

20   municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

21   constitutional right; and (4) that the policy is the moving force behind the constitutional violation."

22   *See Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citations

23   and internal quotation marks omitted). For municipal liability, a plaintiff must plead sufficient

24   facts regarding the specific nature of the alleged policy, custom, or practice to allow the defendant

25   to effectively defend itself, and these facts must plausibly suggest that the plaintiff is entitled to

26   relief. *See AE v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012). It is not sufficient to

27   merely allege that a policy or custom existed or that individual officers' wrongdoing conformed to

28   a policy or custom. *See id*. at 636-68.

United States District Court
Northern District of California

1    "Official municipal policy includes the decisions of a government's lawmakers, the acts of

2    its policymaking officials, and practices so persistent and widespread as to practically have the

3    force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  Ratification of the decisions

4    of a subordinate by an official with final decision-making authority can also be a policy for

5    purposes of municipal liability under § 1983. *See City of St. Louis v. Praprotnik*, 485 U.S. 112,

6    127 (1988).  However, "the mere failure to investigate the basis of a subordinate's discretionary

7    decisions[,]" is not a ratification of those decisions.  *Id*. at 130.  Moreover, mere acquiescence in a

8    single instance of alleged unconstitutional conduct is not sufficient to demonstrate ratification of a

9    subordinate's acts.  *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).

10        A plaintiff may also establish municipal liability upon a showing that there is a permanent

11   and well-settled practice by the municipality which gave rise to the alleged constitutional

12   violation.  *Praprotnik*, 485 U.S. at 127.  Allegations of random acts, or single instances of

13   misconduct, however, are insufficient to establish a municipal custom. *See Navarro v. Block*, 72

14   F.3d 712, 714 (9th Cir. 1995), as amended on denial of reh'g (Jan. 12, 1996); *Thompson v. City of*

15   *Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) *overruled on other ground by Bull v. City &*

16   *Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010).

17        Finally, a plaintiff may establish municipal liability by demonstrating that the alleged

18   constitutional violation was caused by a failure to train municipal employees adequately. *See City*

19   *of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989).  Such a showing depends on three

20   elements: (1) the training program must be inadequate "'in relation to the tasks the particular

21   officers must perform'"; (2) the city officials must have been deliberately indifferent "'to the

22   rights of persons with whom the [local officials] come into contact'"; and (3) the inadequacy of

23   the training "must be shown to have 'actually caused' the constitutional deprivation at issue."

24   *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations omitted); *see*

25   *also Connick,* 131 S. Ct. at 1359-60 ("To satisfy the statute, a municipality's failure to train its

26   employees in a relevant respect must amount to 'deliberate indifference to the rights of persons

27   with whom the [untrained employees] come into contact.' [] Only then 'can such a shortcoming be

28   properly thought of as a city 'policy or custom' that is actionable under § 1983.'" (quoting

1    *Canton*, 489 U.S. at 388)).  However, "[a] municipality's culpability for a deprivation of rights is at

2    its most tenuous where a claim turns on a failure to train." *Connick*, 131 S. Ct. at 1359.

3         "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train

4    was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty v.*

5    *City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  The Supreme Court has explained that

6    "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor

7    disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (internal

8    quotation marks and citation omitted).

9         To plead a policy, custom, or failure to train, a plaintiff must plead specific plausible facts.

10   *See Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by

11   mere conclusory statements, do not suffice." *Id.*; *see also Twombly*, 550 U.S. at 555 ("a plaintiff's

12   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

13   conclusions, and a formulaic recitation of the elements of a cause of action will not do").

14        Individual governmental actors may be held liable for violating an individual's

15   constitutional rights under 42 U.S.C. § 1983.  However, those individuals must be named or

16   preliminarily identified as Doe defendants and sufficient details about their involvement must be

17   pled so that the defendant can be identified.  To plead a claim for a constitutional violation against

18   an individual, plaintiff "must set forth specific facts as to each individual defendant's" causal role

19   in the alleged constitutional deprivation.  *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988)

20   (citation omitted). "The absence of specifics is significant because, to establish individual liability

21   under 42 U.S.C. § 1983, 'a plaintiff must plead that each Government-official defendant, through

22   the official's own individual actions, has violated the Constitution.'" *Hydrick v. Hunter*, 669 F.3d

23   937, 942 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)); *see also Cook v.*

24   *Brewer*, 637 F.3d 1002, 1008 (9th Cir. 2011) ("reliance on speculative and conclusory allegations

25   [was] insufficient to state a facially plausible claim").

26   **A.  Constitutional Claims Against Individual Sheriff Deputies**

27        In her operative pleadings, plaintiff has *only* alleged claims against the Sheriff's

28   Department.  She has not named as defendants nor alleged any claims against individual Sheriff

United States District Court
Northern District of California

8

Deputies.  However, given the nature of her allegations, it appears that plaintiff is attempting to sue the individual Sheriff Deputies who were involved in her arrest and treatment at the jail. However, none of these Deputies are named as defendants in her operative pleading and only two are identified.  *See* Second Amended Claim (Docket No. 64) (identifying "Dominique," the "commanding arresting Sheriff Deputy"; and "Doe 1," the deputy who drove her to jail).

In order to state a claim against any particular Sheriff Deputy, plaintiff must: (i) make it clear in a revised caption that she intends to sue individual Deputies; (ii) in the text of her revised complaint, identify each Deputy defendant by name (if she knows) or by a specific Doe number; and (iii) for each Deputy defendant allege *specific* facts about each individual's role in the events and what each individual did to cause her harm.  *See Leer v. Murphy*, 844 F.2d at 634.

The use of "John Doe" or "Jane Doe" to identify a defendant is not favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), but sometimes is necessary when a plaintiff cannot discover the identity of the defendant before filing the complaint. Although the use of a John Doe or Jane Doe defendant designation is acceptable to withstand dismissal of a complaint at the initial review stage – assuming sufficient facts have been alleged to state a claim against the Doe defendant – using a John Doe or Jane Doe defendant designation creates its own problem:  that person cannot be served with process until he or she is identified by his or her real name.  The burden remains on the plaintiff to identify the defendant, by securing the reports regarding her arrest, etc.  The court will not undertake to investigate the name and identity of an unnamed Deputy defendant.

With respect to the identifies of the Deputies, plaintiff must plead specific facts so that the Sheriff's Department can identify the Deputies involved in order to defend this case.  Once the Deputies are identified, plaintiff will be responsible for serving each of the individual Sheriff Deputies.  But discovery in aid of identification and service *will not occur* until the Court is satisfied that plaintiff has stated sufficient facts to support a claim against each of the named and Doe Deputies.

Assuming plaintiff intends to sue individual Deputies, below the Court identifies the facts that plaintiff needs to plead against the individuals as well as the facts plaintiff needs to plead to

9

establish the liability of the Sheriff's Department.

### B. Constitutional Claims Against the Sheriff's Department

#### 1. False Arrest/False Imprisonment

##### a. Legal Standard

"[A]n arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). In order to state this claim against an individual Deputy Sheriff, plaintiff needs plead that she was arrested and plead facts showing that the arresting officer did not have probable cause to believe she committed a crime. In order to state a claim against the Sheriff's Department, she must plead facts showing that the Sheriff's Department has a policy or custom of making false arrests.

##### b. Adequacy of Allegations

Here, while plaintiff has plausibly alleged that she was arrested on May 23, 2012 for trespass and "resisting/delaying" (Docket No.64) she has alleged *no* plausible facts that Marin has a policy or custom to arrest people without probable cause. To make this claim against the Sheriff's Department, plaintiff cannot rely solely on the fact that she was arrested, but she must plead facts that if believed demonstrate the existence of the policy or custom. *See Gillette*, 979 F.2d at 1348 (mere acquiescence in a single instance of alleged unconstitutional conduct is not sufficient to demonstrate ratification of a subordinate's acts); *Navarro*, 72 F.3d at 714 (allegations of random acts, or single instances of misconduct, however, are insufficient to establish a municipal custom).

In the operative pleadings, I find no factual allegations (much less plausible allegations) that the Sheriff's Department has a policy or practice to arrest individuals absent probable cause. In her Opposition to the Motion to Dismiss, plaintiff asserts that the manner in which she was handled was "so obviously habituated such that there is no need to show an implemented policy." Docket No. 65 at 1. She also complains that arrests are carried out in a wrongful manner under what is simply "assumed as an acceptable or customary practice" and that much police work "is practiced this way in unison." *Id*. Ms. Anaya asserts that what was done to her "is customary or usual and as such allowable and justified practices in Marin County," and asserts she "could find

United States District Court
Northern District of California

no evidence otherwise." *Id*. at 2-3.  She alleges that, as a result of the "profile" that was created during her initial arrest, she was "sought out, followed and arrested again" by the Santa Rosa Police Department shortly after "giving notice of this suit." *Id*. at 3.  She complains that she is not alone in being arrested without cause and that Marin has financial incentives to arrest and release without charges, as happened to her.  *Id*.

These allegations of policy or custom are insufficient as a matter of law.  They are nothing more than conclusory assertions without any facts (other than facts regarding her arrest) to support her theory that the Sheriff's Department has a policy or custom of arresting without probable cause.  These types of conclusory allegations cannot defeat a motion to dismiss.  *See Cook v. Brewer*, 637 F.3d at 1008.

Reading the operative pleadings liberally, plaintiff is also alleging she was arrested to suppress her First Amendment rights; presumably to suppress her protest over her treatment by the MJCC.[2]  However, in her Second Amended Claim, she admits she was "not a protester per se." Docket No. 64 at 5.  Plaintiff has failed to allege facts that show she was exercising her First Amendment rights at the time she was arrested.  More problematic on this motion, however, is the lack of any factual allegations (much less plausible allegations) showing that the Sheriff's Department had a policy or custom of suppressing First Amendment speech rights by arresting protesters.

Plaintiff's claims against the Sheriff's Department for false arrest/imprisonment must be DISMISSED with leave to amend.

**2.  Excessive Force in Arrest and at the Jail**

    **a.  Legal Standard**

A claim that a law enforcement officer used excessive force in the course of an arrest or other seizure is analyzed under the Fourth Amendment reasonableness standard.  *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir.

---

[2]  If plaintiff was arrested because of her First Amendment activities and, therefore, not as a result of probable cause, the claim would be cognizable as a false arrest.  Therefore, I analyze the "First Amendment" claim against the Sheriff's Department as one of false arrest.

United States District Court
Northern District of California

1994). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of '"the nature and quality of the intrusion on the individual's Fourth Amendment interests"' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations omitted).  Plaintiff's claim for excessive force at the jail arises under the due process clause and is subject to analysis under the Fourth Amendment reasonableness standard.  *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002) ("The Due Process clause protects pretrial detainees from the use of excessive force that amounts to punishment.").

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Constitution], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005).  When determining whether the force is excessive, the court should look to the "extent of injury . . ., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

### b.  Adequacy of Allegations

With respect to the Sheriff's Department, plaintiff has failed to allege facts showing that the Department had a policy or custom of allowing the use of excessive force during arrests or at the jail.  With respect to the individual Sheriff Deputies, plaintiff alleges that she suffered harm from their actions, but does not plead facts showing that their use of force was excessive.  For example, plaintiff does not allege that she attempted to voluntarily enter the patrol car or that she was not resisting the officers, and yet the arresting officers used unnecessary and maliciously forced her into the patrol car.  In order to state a claim against individual Deputies, plaintiff needs to plead more facts from which is can be shown that each Deputies' use of force in each circumstance was excessive and malicious.  The fact that plaintiff suffered injuries to her wrists, arms, and back do not adequately plead that the force used was excessive and malicious.

Plaintiff's excessive force claims are DISMISSED with leave to amend.

United States District Court
Northern District of California

### 3. Conditions of Confinement

In the operative pleadings, plaintiff complains that she suffered from unconstitutional conditions of confinement because she was denied a special diet (fresh, low sugar/salt, high fiber), denied adequate fluid, was kept in a room without an adequate temperature, was not given a linens/a blanket, was denied an appropriate toilet, and was forced to stay in soiled clothes.

#### a. Legal Standard

For pretrial detainees, the "Fourteenth Amendment requires the government to do more than provide the "'minimal civilized measure of life's necessities.'" *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (quoting *Rhodes*, 452 U.S. 337, 347 (1981)).[3] However, a plaintiff must plead facts showing that prison officials acted with deliberate indifference to the conditions of confinement or "that their conduct was so reckless as to be tantamount to a desire to inflict harm." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011) (internal quotation marks and citation omitted).

Where jail officials placed a pretrial detainee who was using crutches in a unit with non-handicapped accessible showers and the detainee complained about falling, fell, and further injured his leg, jail officials demonstrated deliberate indifference to the detainee's safety. *See Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998); b*ut see id.* at 1129-30 (holding that no deliberate indifference existed where detainee did not inform jail officials of problems with managing his crutches and his food tray). With respect to complaints about cell temperature, the Eighth Amendment requires adequate heating, but not necessarily a "comfortable" temperature. *Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010) (per curiam). Plaintiff must plead facts to establish that the temperature in holding cells deprived him of civilized measures of life's necessities. *Frost*, 152 F.3d at 1130. With respect to food, the "Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993); *see also Foster v. Runnels*, 554 F.3d 807, 812-13, 813 n.2 (9th Cir. 2009) (denial of 16 meals in 23 day period sufficiently serious

---

[3] For pretrial detainees, protection against unconstitutional conditions of confinement is covered by the due process clause of the Fourteenth Amendment, which incorporates the standards of the Eight Amendment's prohibition against cruel and unusual punishment. *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011).

deprivation).

### b. Adequacy of Allegations

As an initial matter, plaintiff does not say how long she was in the holding cell – but only that her confinement ended on May 24, 2012. The length of time a pretrial detainee is subject to adverse conditions of confinement is an important factor in stating a claim. *See, e.g.*, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) ("The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred."). More importantly, plaintiff does not allege that she was denied food and water during this time. She instead makes vague assertions that the food was not fresh, healthy, and the liquid "not adequate." Those allegations do not amount to unconstitutional conditions of confinement. Similarly, she says she was denied linens and a blanket, but does not state that the temperature of the cell without the linens and blanket was so low to be unhealthy or punishing, considering the amount of time she was held in the cell. With respect to her soiled clothes, plaintiff does not allege that she asked any Deputy to provide her with clean clothes or that any Deputy knew her clothes were soiled, in order to demonstrate deliberate indifference. With respect to the toilet, plaintiff admits that there was a hole in the ground so she could urinate, but alleges there was no facility for defecation. Again, without an explanation of the amount of time that she was held in that specific cell, she has failed to state a plausible claim of unconstitutional conditions of confinement. The fact that plaintiff was uncomfortable and felt neglected by the Deputies is simply not sufficient to state a claim for constitutional deprivation.

Finally, plaintiff has failed to allege any facts showing that the Sheriff's Department had a policy or practice of depriving persons in holding cells in the jail of civilized measures of life's necessities. Plaintiff's claims regarding her condition conditions of confinement are DISMISSED with leave to amend.

### 4. Denial of Medicines and Medical Treatment

Plaintiff asserts that at the jail she was denied access to her medicine and appropriate medical treatment, including access to psychiatric staff. In order to state viable claims against Sheriff's Department (or against individual Deputies), plaintiff will have to show the Deputies'

United States District Court
Northern District of California

1    conduct amounted to deliberate indifference.

2              a.      **Legal Standard**

3         "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action

4    under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *see also Jett v. Penner*, 439 F.3d 1091,

5    1096 (9th Cir. 2006). The deliberate indifference standard applies to due process claims that

6    correction facility officials knew of but failed to address the medical needs of a pretrial detainee.

7    *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241-44 (9th Cir. 2010).[4] "A 'serious'

8    medical need exists if the failure to treat a prisoner's condition could result in further significant

9    injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050,

10   1059 (9th Cir. 1992), overruled by on other grounds by *WMX Technologies, Inc. v. Miller*, 104

11   F.3d 1133 (9th Cir. 1997) (quoting *Estelle*, 429 U.S. at 104); *see also Akhtar v. Mesa*, 698 F.3d

12   1202, 1213 (9th Cir. 2012). Delay of, or interference with, medical treatment can also amount to

13   deliberate indifference. *See Jett*, 439 F.3d at 1096; *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir.

14   2002) (denial of medical attention and showers for four hours after being sprayed with pepper

15   spray sufficient to state claim).

16        "Deliberate indifference is a high legal standard. A showing of medical malpractice or

17   negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."

18   *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Negligence is insufficient to establish

19   deliberate indifference to serious medical needs; the prison employee must be aware of the

20   substantial risk of serious harm, and then have been deliberately indifferent to it. *Frost*, 152 F.3d

21   at 1130; *Gibson*, 290 F.3d at 1188. For example, prison employees may violate a pretrial

22   detainees due process right when they fail to "respond to the legitimate medical needs of a

23   [pretrial] detainee whom [they] ha[ve] reason to believe is diabetic." *Lolli v. Cnty. of Orange*, 351

24   F.3d 410, 420 (9th Cir. 2003). However, isolated occurrences of neglect or inadvertent failures to

25

26   _____

27   [4]  Pretrial detainees' rights derive from the due process clause rather than the Eighth Amendment's
     protection against cruel and unusual punishment. *Gibson v. Cnty. of Washoe, Nev*., 290 F.3d
     1175, 1187 (9th Cir. 2002). The due process clause imposes, at a minimum, the same duty the
28   Eighth Amendment imposes, the right to not have officials be deliberately indifferent to "serious"
     medical needs. *Id*.

1    provide medical assistance do not constitute deliberate indifference to serious medical needs. *See*

2    *Jett*, 439 F.3d at 1096; *McGuckin*, 974 F.2d at 1060.

3         **b.  Adequacy of Allegations**

4         Plaintiff has failed to state this claim.  She does not identify what medicines she needed

5    during the time she was held in jail, when or how often she was supposed to take them, and what

6    specific harm arose because she was not able to take them while in jail.  She also fails to allege

7    that she had an urgent need to speak with a psychiatrist during her time in the jail and the failure to

8    provide access to a psychiatrist caused her specific harm.

9         More fundamentally, plaintiff alleges no facts showing that the Deputies acted with

10   deliberate indifference.  There are no facts showing that plaintiff informed any Deputy that she

11   needed specific medicines, no facts that Deputies knew her need, and no facts that plaintiff

12   suffered a *particular harm* because the Deputies failed to provide her with specific medicines.

13   The same is true of her complaint that she was denied access to a psychiatrist.  The fact that she

14   felt neglected is not sufficient.  She must allege facts showing deliberate indifferent to serious

15   medical needs that could result in "significant injury" or "wanton" infliction of pain.  Finally,

16   there are no facts that the Sheriff's Department ratified the actions of the Deputies in denying

17   plaintiff access to her medications or otherwise had a policy or practice of being deliberately

18   indifferent to the medical needs of pretrial detainees.  Plaintiff's denial of medical treatment claim

19   against the Sheriff's Department is DISMISSED with leave to amend.[5]

20        Plaintiff has failed to state any constitutional claim against the Sheriff's Department.

21   However, these claims are DISMISSED with LEAVE TO AMEND.  If plaintiff wishes to pursue

22   any of these claims against the Sheriff's Department, she must plead specific facts beyond ones

23   concerning her individual treatment showing that the Sheriff's Department has a policy or custom

24   of false arrest, excessive force and unconstitutional conditions of confinement and that her

25   treatment rose to the high level of deliberate indifference.

26   _____

27   [5]  The Court need not reach plaintiff claims that the Sheriff's Department or individual Deputies
     conspired with MJCC employees to deprive her of her constitutional rights, because she has not

28   yet adequately stated a claim of constitutional deprivation.  For that reason, plaintiff's conspiracy
     claims are likewise DISMISSED with leave to amend.

United States District Court
Northern District of California

## II.  ADA CLAIMS

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12101 et seq. (ADA),
provides that "no qualified individual with a disability shall, by reason of such disability, be
excluded from participation in or be denied the benefits of the services, programs, or activities of a
public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a
claim under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an
individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the
benefit of some public entity's services, programs, or activities; (3) the plaintiff was either
excluded from participation in or denied the benefits of the public entity's services, programs or
activities, or was otherwise discriminated against by the public entity; and (4) such exclusion,
denial of benefits, or discrimination was by reason of the plaintiff's disability.  *Thompson v.
Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

Although § 12132 does not expressly provide for reasonable accommodations, the
implementing regulations provide that "[a] public entity shall make reasonable modifications in
policies, practices, or procedures when the modifications are necessary to avoid discrimination on
the basis of disability, unless the public entity can demonstrate that making the modifications
would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. §
35.130(b)(7).  The duty to provide "reasonable accommodations" or "reasonable modifications"
for disabled people under Title II of the ADA arises only when a policy, practice or procedure
discriminates on the basis of disability.  *Weinreich v. Los Angeles County MTA*, 114 F.3d 976, 979
(9th Cir. 1997).

The elements of a claim under the Rehabilitation Act are that: (1) the plaintiff is a
handicapped person under the Act; (2) he is otherwise qualified; (3) the relevant program receives
federal financial assistance; and (4) the defendants impermissibly discriminated against him on the
basis of the handicap  *See Bonner v. Lewis*, 857 F.2d 559, 562-63 (9th Cir. 1988); *cf. Olmstead v.
Zimring*, 527 U.S. 581, 589-90 (1999) (noting similarities between Rehabilitation Act and Title II
of ADA).

The provisions of the ADA and the Rehabilitation Act apply to law enforcement and

United States District Court
Northern District of California

17

1    correctional facilities. *Lee v. City of L.A.*, 250 F.3d 668, 691 (9th Cir. 2001).

2           Here, plaintiff's main ADA claims appear to be that she was not transported to the jail in

3    an appropriate vehicle given her disabilities (it was too small), and that she was not provided with

4    "mobility equipment" in her cell. There are also references in the operative pleadings to plaintiff

5    having been in a wheelchair during her transportation to and/or during her time in the jail, but

6    other allegations that she was denied a wheelchair. *See, e.g.*, Docket No. 21 at 5 ("not allowed a

7    wheelchair after I was considered to be arrested").[6]

8           Claims based on a municipality's failure to provide appropriate post-arrest transportation

9    for persons with disabilities are cognizable under the ADA and Rehabilitation Act. *See, e.g.,*

10   *Gorman v. Bartch*, 152 F.3d 907, 916 (8th Cir. 1998) (wheel-chair bound plaintiff stated a claim

11   under the ADA and Rehabilitation Act against municipality for failure to provide appropriate

12   transportation in police van).

13          Here, however, plaintiff's complaint lacks sufficient facts to state the bases for her ADA

14   claim. It is not clear from the operative pleadings why she contends the police car transport was

15   not appropriate – she claims it was too small but without further factual explanation as to *why* it

16   was inappropriate given her claimed disability of relapsing-remitting multiple sclerosis (RRMS).

17   For example, was the patrol car was inappropriate because she was having some kind of RRMS

18   flare up which caused weakness or spasticity so that she needed to be transported in a wheelchair?

19   Or did she need to be prone because of her medical condition at the time of her arrest? She must

20   also explain how her disability created physical limitations or symptoms at the time of her arrest

21   and transportation so that she needed specifically identified reasonable accommodations. The

22   allegation regarding denial of "mobility equipment" in her cell at the jail is likewise inadequately

23   pled. She fails to identify the "mobility equipment" she claims she needed and explain why that

24   specific equipment was required given her conditions at that time and the duration of her stay in

25   the cell. Finally, as noted above, it is unclear whether and, if so, when plaintiff was denied a

26

27   [6] Plaintiff's claims about access to medicines are not cognizable under the ADA and are addressed
     as allegations of unconstitutional conditions of confinement. *Simmons v. Navajo Cnty., Ariz.*, 609

28   F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not
     inadequate treatment for disability.").

1    wheelchair during her time within the jail.

2        Plaintiff's ADA claims against the Sheriff's Department are DISMISSED with leave to

3    amend.

4    **III.  TORT CLAIMS**

5        Plaintiff also alleges a number of tort claims against the Sheriff's Department including,

6    false arrest, false imprisonment and negligent and intentional infliction of pain.  As an initial

7    matter, plaintiff's clearest description of the bases for her tort claim are laid out in the recently

8    filed Second Amended Claim.  Docket No. 64.  As noted above, the Sheriff's Department has not

9    had an opportunity to respond to that filing, as it was made after the Department moved to dismiss.

10        The Sheriff's Department nonetheless moves to dismiss plaintiff's negligence claims,

11   arguing that a public entity is not liable for its own negligent conduct and cannot be held liable in

12   tort except where there is a specific statute declaring it to be liable.  Motion to Dismiss [Docket

13   No. 49] at 9.  However, as the recognized in *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175

14   (2003) "Government Code section 815.2, subdivision (a), makes a public entity vicariously liable

15   for its employee's negligent acts or omissions within the scope of employment (see Gov. Code, §

16   820)" as long as those employees are not immune from liability.  *Id.* at 1180.  The Sheriff's

17   Department does not argue that the individual Sheriff's Deputies involved in plaintiff's arrest and

18   treatment at jail are immune from liability.  The negligence claims premised on vicarious liability,

19   therefore, cannot be dismissed on this motion.

20        However, as noted above, plaintiff's Second Amended Claim explained for the first time

21   plaintiff's theories for her tort claims against the Sheriff's Department.  For this reason, the

22   Department may move to dismiss the tort claims again, following the filing of plaintiff's Third

23   Amended Complaint.

24                              **CONCLUSION**

25        For the foregoing reasons, plaintiff's claims against the Sheriff's Department are

26   DISMISSED with leave to amend.  No claims have been stated against individual deputies.  If

27   plaintiff has facts that she can plead to address the problems identified by the Court, plaintiff may

28   file a Third Amended Complaint by **January 2, 2015**.  With respect to the individual deputies,

1   plaintiff must not only plead plausible and sufficient additional facts but link those facts to the

2   particular claims in the Third Amended Complaint (such as the constitutional or tort claims).  If

3   plaintiff does not file a Third Amended Complaint by **January 2, 2015**, the Court may dismiss

4   plaintiff's claims against the Marin County Sheriff's Department WITH PREJUDICE.

5        The December 2, 2014 Case Management Conference in this case is VACATED.  A Case

6   Management Conference will be held on Wednesday **January 7, 2015,** in conjunction with the

7   hearing on the MJCC's motion to dismiss.

8        **IT IS SO ORDERED**.

9   Dated: November 24, 2014



WILLIAM H. ORRICK
United States District Judge